THOMPSON, Presiding Judge.
Samuel Rodgers appeals from a judgment awarding Elizabeth MeElroy a fee to compensate her for serving as the personal representative of the estate of Ron’Dre-quez Cortez White.
The record indicates the following. In July 2009, White was killed in a motor-vehicle accident caused by a drunk driver. White, who was 20 years old at the time of the accident, died intestate. On February 4, 2010, MeElroy, the county administrator for Jefferson County, filed a petition in the Jefferson County Probate Court (“the probate court”) seeking to administer White’s estate. The probate court appointed MeElroy to serve as personal representative of White’s estate, and it granted her letters of administration. MeElroy posted the $50,000 bond required by law. On April 7, 2010, MeElroy filed an inventory of White’s estate, which she determined had no assets. She also identified White’s mother, Sandey Greene, as White’s only known heir.
As part of her duties as personal representative, MeElroy hired John Stamps, an attorney who already represented Greene, to pursue a wrongful-death action in connection with White’s death. Stamps was able to reach a settlement of $150,000 with White’s underinsured-motorist insurance carrier without having to file a lawsuit. He did, however, file a wrongful-death action against Tony Ferrell and Edna Ferrell. The Ferrells’ liability-insurance carrier settled for $25,000. Ultimately, a *1032 judgment of $300,000 was entered against Tony Ferrell.
Meanwhile, on June 18, 2010, Samuel Rodgers filed a petition in the probate court seeking an order establishing that he had the right to inherit from White because, Rodgers said, he was White’s father.[1] Greene contested Rodgers’s petition, and the matter was moved to the Jefferson Circuit Court (“the trial court”). After a jury trial in October 2011, the jury returned a verdict finding that Rodgers was White’s father and, therefore, that he was entitled to inherit from White. On October 13, 2011, the trial court entered a judgment on the verdict and ruled that, in addition to being entitled to inherit from White under the laws of intestate succession, Rodgers also was entitled to a distribution of the wrongful-death proceeds.
Rodgers immediately filed a motion asking that the trial court order McElroy to release the wrongful-death proceeds that had been collected. In his motion, Rodgers contended that McElroy was not entitled to be compensated for her services as personal representative from the wrongful-death proceeds. McElroy objected, and the matter was litigated. After a hearing, the trial court entered an order finding that McElroy was entitled to compensation for her services as personal representative and awarded her $15,750, which equaled 9% of the total of $175,000 in wrongful-death proceeds that had been collected. The balance of the proceeds was divided evenly between Greene and Rodgers.[2] Rodgers appealed.
Rodgers contends that the trial court had no discretion to award McElroy a fee in this case. Specifically, he argues that White’s estate had no value and that because, he says, wrongful-death proceeds are not part of the estate and cannot be used to pay estate-administration fees, there was no money from which the trial court could have awarded McElroy fees for her work as the personal representative in this case.
This issue presents this court with a question of law, which we review de novo.
“ ‘[Wjhere the facts before the trial court are essentially undisputed and the controversy involves questions of law for the court to consider, the court’s judgment carries no presumption of correctness.’ Allstate Ins. Co. v. Skelton, 675 So.2d 377, 379 (Ala.1996). Questions of law are reviewed de novo. BT Sec. Corp. v. W.R. Huff Asset Mgmt. Co., 891 So.2d 310 (Ala.2004).’
“Alabama Republican Party v. McGinley, 893 So.2d 337, 342 (Ala.2004).”
Ex parte Terry, 957 So.2d 455, 457 (Ala.2006).
Section 6-5-410, Ala.Code 1975, provides, in part:
“(a) A personal representative may commence an action and recover such damages as the jury may assess in a court of competent jurisdiction within the State of Alabama where provided for in subsection (e), and not elsewhere, for the wrongful act, omission, or negligence of any person, persons, or corporation, his or her or their servants or agents, whereby the death of the testator or *1033 intestate was caused, provided the testator or intestate could have commenced an action for the wrongful act, omission, or negligence if it had not caused death.
[[Image here]]
“(c) The damages recovered are not subject to the payment of the debts or liabilities of the testator or intestate, but must be distributed according to the statute of distributions.”
In addition to § 6-5-410(c), Rodgers relies on caselaw that, he says, supports his position that the costs of administration of an estate — including compensation for the services provided by a personal representative — cannot be paid from money recovered in a wrongful-death action. However, none of the cases he cites directly addresses the issue whether a personal representative can be compensated from damages recovered in a wrongful-death action when the estate has no assets.
Indeed, Alabama’s appellate courts rarely have been called upon to address the issue whether a personal representative who initiates a wrongful-death action is entitled to a fee paid from the proceeds collected from that action. More than a century ago, in Louisville & Nashville R.R. Co. v. Perkins, 1 Ala.App. 376, 56 So. 105 (1911), the Alabama Court of Appeals, the predecessor to this court, analyzed the language of Section 2486 of the Alabama Code of 1907, the statute then authorizing a personal representative to bring a wrongful-death action. The court concluded that, in cases in which the estate of the deceased has no other assets, the proceeds from a wrongful-death action can be used to pay the reasonable fees and costs of the personal representative. 1 Ala.App. at 381, 56 So. at 107. However, in his brief, Rodgers asserts that Perkins stands for the proposition that the attorney fee and court costs incurred from the prosecution of a wrongful-death case can be paid from the proceeds of money recovered in the case. In support of his assertion, Rodgers quotes from Perkins:
“In the above opinion, we have confined ourselves to the issues presented by the facts and the pleadings contained in the record. We intimate no opinion as to whether damages recovered under the ‘Homicide Act’ above quoted [§ 2486] are not subject to all costs of administration in cases where the intestate left no estate. That question is not before us, and we express no opinion on it.”
1 Ala.App. at 385, 56 So. at 108.
In fact, the holding in Perkins is not clear as to whether the “reasonable counsel fees” a personal representative may receive from the proceeds recovered in a wrongful-death action applies only to the personal representative’s services in connection with the wrongful-death action or all the personal representative’s services, including administration of the estate. Even if we were to assume for purposes of this opinion that Rodgers’s position is correct and that the Perkins court did not expressly allow a personal representative to be paid for his or her services on behalf of the estate from the proceeds recovered in a wrongful-death action, even in cases in which the estate has no assets, the Perkins court also did not prohibit such a payment. Indeed, the court “expressed] no opinion” as to whether “all costs of administration” of the estate were payable from the wrongful-death proceeds.
Like § 6-5^410 — the current statute Rodgers relies on to support his contention that McElroy is not entitled to be paid fees out of the proceeds obtained from the wrongful-death action — § 2486 provided that “the damages recovered [in the wrongful-death action] are not subject to the payment of the debts or liabilities of the testator or intestate, but must be dis *1034 tributed according to the statute of distributions.” § 2486, Ala.Code of 1907.[3] Because the language of § 2486 is so similar to that of § 6-5-410, we find that the Perkins court’s analysis regarding the payment of a fee to a personal representative with funds collected in an action brought pursuant to § 2486 is instructive in this case. In reaching its holding that the personal representative could be paid from the proceeds obtained from the wrongful-death action, the Perkins court reasoned as follows:
“As the personal representative of the deceased only can sue for the damages recoverable under the [wrongful-death] act, and as it is an act which was adopted by the state as a part of its public policy in the prevention of homicides, it was, manifestly, not the purpose of the Legislature to require the personal representative to bear the expenses incident to a suit brought for the recovery of damages under the statute out of his personal funds. While the statute exempts the recovery from the payment of the debts of the decedent and directs that it shall be distributed according to the statute of distribution, it does not exempt it from administration as in the case of exemptions allowed the widow and minor children out of the estate of a deceased person. When this act was passed by the Legislature, its members knew that they were providing a remedy for ‘the prevention of homicides’ applicable to all persons, those possessing estates and those without property, and to hold that the party named in the act, ‘the personal representative of the deceased,’ must, out of his own funds, if the deceased left no estate, bear the burden and expenses of a suit to enforce the penalty recoverable under and by virtue of the act, would be to so burden the act and so narrow it as to defeat the purposes for which it was called into existence.
“ ‘The costs, fees, and expenses attending a litigation for the benefit of particular heirs, legatees, next of kin, or other persons, should be allowed, if at all, as against their own particular funds or interests, proportionately or wholly, as the case may be, rather than out of the general estate.’ 18 Cyc. p. 280(c), and authorities cited.
“ ‘The costs and expenses of litigation respecting a particular fund in the hands of an executor, between the specific legatee, the residuary legatee, and the heir at law, and also the commissions of the executor for receiving and disbursing the money, are properly payable out of the fund, and not out of the estate generally.’ Johnson v. Holifield, 82 Ala. 123, 2 South. [7]53 [(1887)].
“It is therefore apparent that, certainly in cases where the estate of the deceased has no other assets, the personal representative is entitled to his reasonable counsel fees and costs out of the sum recovered by him in a suit brought under and by virtue of the statute, and which were incurred by him in said suit.”
1 AlaApp. at 380-81, 56 So. at 106-07. However, although Perkins clearly allows for a personal representative to be compensated for counsel fees and costs in *1035 curred by the personal representative in a wrongful-death action, the opinion does not make clear that its holding extends to a personal representative who is not the attorney prosecuting the wrongful-death action. Therefore, our analysis continues.
Rodgers correctly states that, under Alabama law, the proceeds collected as a result of a wrongful-death claim are not part of the decedent’s estate. Steele v. Steele, 623 So.2d 1140, 1141 (Ala.1993) (“[D]amages awarded pursuant to [the Wrongful Death Act, § 6-5-410,] ... are not part of the decedent’s estate.”). However, the law does not necessarily prohibit compensation to the personal representative for the services the personal representative provides in pursuit of a wrongful-death action. The Alabama legislature has established that a personal representative is entitled to compensation as follows:
“(a) A personal representative is entitled to reasonable compensation for services as may appear to the court to be fair considering such factors that may include, but are not limited to, the novelty and difficulty of the administrative process, the skill requisite to perform the service, the likelihood that the acceptance of the particular employment will preclude other employment, the fee customarily charged in the locality for similar services, the amount involved and the results obtained, the requirements imposed by the circumstances and condition of the estate, the nature and length of the professional relationship with the decedent, the experience, reputation, diligence, and ability of the person performing the services, the liability, financial or otherwise, of the personal representative, or the risk and responsibility involved, which shall not exceed two and one-half percent of the value of all property received and under the possession and control of the personal representative and two and one-half percent of all disbursements.
“(b) In addition the court may allow a reasonable compensation for extraordinary services performed for the estate.”
§ 43-2-848(a) and (b), Ala.Code 1975 (emphasis added).
The term “extraordinary services” is not defined in the statute or within Title 43 of the Code of Alabama of 1975, and our research has revealed no caselaw defining the term. However, in a recent special writing, Justice Murdock outlined the role of a personal representative in a wrongful-death action.
“This Court has long recognized that,
“ ‘[i]n prosecuting [wrongful-death] actions, the personal representative does not act strictly in his capacity as administrator of the estate of his decedent, because he is not proceeding to reduce to possession the estate of his decedent, but rather he is asserting a right arising after his death, and because the damages recovered are not subject to the payment of the debts or liabilities of the decedent. He acts rather as an agent of legislative appointment for the effectuation of the legislative policy....’
“Hatas v. Partin, 278 Ala. 65, 68, 175 So.2d 759, 761 (1965); see also Steele [v. Steele ], 623 So.2d [1140] at 1141 [ (Ala.1993) ] (noting that the ‘personal representative ... act[s] as agent by legislative appointment for the effectuation of a legislative policy of the prevention of homicides through the deterrent value of the infliction of punitive damages’). ‘Upon a recovery, [the personal representative] acts as a quasi trustee for those who are entitled thereto under the statute of distribution. Such damages *1036 are not subject to administration and do not become part of the deceased’s estate.’ United States Fid. & Guar. Co. v. Birmingham Oxygen Serv., Inc., 290 Ala. 149, 155, 274 So.2d 615, 621 (1973). Indeed, commenting on an earlier version of Alabama’s wrongful-death statute, this Court noted that the legislature has
“‘impose[d] upon the administrator a trust separate and distinct from the administration. The trust is not for the benefit of the estate, but of the widow, children, or next of kin of the deceased. The administrator fills this trust, but he does not do it in the capacity of representative of the estate. It is altogether distinct from the administration, notwithstanding it is filled by the administrator.’
“Hicks v. Barrett, 40 Ala. 291, 293 (1866) (discussing Ala.Code of 1852, § 1938).”
Ex parte Taylor, 93 So.3d 118, 119 (Ala.2012) (Murdock, J., concurring specially) (emphasis added).
In this case, McElroy’s role as the personal representative pursuing a wrongful-death claim as a result of White’s death was not done for the benefit of White’s estate, but for his next of kin, including Rodgers. Therefore, Rodgers’s assertion that McElroy is not entitled to compensation for pursuing the wrongful-death action because the estate had no assets does not withstand scrutiny. Because the work performed by a personal representative in a wrongful-death action goes beyond marshaling and distributing assets on behalf of a decedent’s estate and actually benefits the decedent’s next of kin, that work constitutes an “extraordinary service” as contemplated by § 43-2-848(b). Accordingly, we conclude that McElroy was entitled to compensation even though White’s estate had no assets. Furthermore, because her role as the personal representative in the wrongful-death action was carried out on behalf of White’s next of kin and not for the benefit of his estate, compensating McElroy from the proceeds recovered in the wrongful-death action does not constitute a payment of White’s liabilities or debts and, therefore, does not run afoul of § 6-5-410(c), as Rodgers argues. Accordingly, we conclude that the trial court did not err in awarding McElroy a fee from the proceeds derived from the wrongful-death claim.
Rodgers also argues that the fee of $15,750 that the trial court awarded to McElroy was excessive. The fee is 9% of the $175,000 in wrongful-death proceeds collected. Rodgers did not file a post-judgment motion challenging the amount of the award.
“The long-established precedent in Alabama caselaw is that an appellate court cannot reverse a trial court’s judgment on an argument that was not first presented to the trial court. See Belcher v. Belcher, 18 So.3d 946, 948 (Ala.Civ.App.2009) (holding that a party had failed to preserve an argument for appellate review when that party had failed to argue the issue to the trial court ‘either at trial or in his post-judgment motion’); Smith v. Equifax Servs., Inc., 537 So.2d 463, 465 (Ala.1988) (‘[T]his Court will not reverse the trial court’s judgment on a ground raised for the first time on appeal.’); and Andrews v. Merritt Oil Co., 612 So.2d 409, 410 (Ala.1992) (citing Rodriguez-Ramos v. J. Thomas Williams, Jr., M.D., P.C., 580 So.2d 1326 (Ala.1991)) (‘This Court cannot consider arguments raised for the first time on appeal; rather, our review is restricted to the evidence and arguments considered by the trial court.’). As our supreme court has stated:
*1037 “ ““ “[I]t is a necessary corollary of our adversary system in which issues are framed by the litigants and presented to a court; ... fairness to all parties requires a litigant to advance his contentions at a time when there is an opportunity to respond to them factually, if his opponent chooses to; ... the rule promotes efficient trial proceedings; ... reversing for error not preserved permits the losing side to second-guess its tactical decisions after they do not produce the desired result; and ... there is something unseemly about telling a lower court it was wrong when it never was presented with the opportunity to be right.... ’
“Birmingham Hockey Club, Inc. v. National Council On Comp. Ins., Inc., 827 So.2d 73, 80 (Ala.2002) (quoting Ex parte Elba Gen. Hosp., 828 So.2d 308, 314 (Ala.2001), quoting in turn Cantu v. State, 660 So.2d 1026, 1031-32 (Ala.1995) (Maddox, J., concurring in part and dissenting in part), quoting in turn State v. Applegate, 39 Or.App. 17, 21, 591 P.2d 371, 373 (1979)).”
A.M.F. v. Tuscaloosa Cnty. Dep’t of Human Res., 75 So.3d 1206, 1210 n. 3 (Ala.Civ.App.2011). Because Rodgers failed to present this issue to the trial court, we will not address it on appeal.
For the reasons set forth above, we conclude that the trial court did not abuse its discretion in awarding McElroy a fee for her services as the personal representative in this case and that the fee was properly awarded from the proceeds derived from the wrongful-death claim that arose from White’s death. The trial court’s judgment is affirmed.
AFFIRMED.
PITTMAN, J., concurs.
BRYAN and THOMAS, JJ., concur in the result, without writings.
MOORE, J., dissents, with writing.

. Rodgers’s attorney asserts that he mailed a petition to the probate court to probate White’s estate but that the petition was never filed. From the record, it appears that Rodgers's attorney did not pursue the matter.

. Stamps, the attorney who McElroy hired to pursue the wrongful-death claims, had already received his fee from the wrongful-death proceeds. Rodgers does not challenge the payment of Stamps's fee from the wrongful-death proceeds.

. Section 2486 of the Alabama Code of 1907 provided, in pertinent part, that "[a] personal representative may maintain an action, and recover such damages as the jury may assess, for the wrongful act, omission, or negligence of any person or persons, or corporation, his or their servants or agents, whereby the death of his testator or intestate was caused, ... and the damages recovered are not subject to the payment of the debts or liabilities of the testator or intestate, but must be distributed according to the statute of distributions.”